Good morning, Your Honors. Steve Schmidt appearing on behalf of Frank Carson, appellant. Your Honor, as you well know from the briefs, this case involves a dismissal by the district court sua sponte. Judge Wanger dismissed the case initially with leave to amend on the sua sponte basis, the unargued basis that there is a failure to state sufficient facts for a State action under Section 1983, that there's actions under color of law. Subsequently, Plaintiff Mr. Carson, we filed an amended complaint that addressed that issue. And again, there's a 12b-6 motion made by the defendants, which, as with the prior 12b-6 motion, did not raise the under color of law argument whatsoever. Once again, the district court raised the issue sua sponte without any argument, at least, I should say, at least without any written argument, on the issue of under color of law and dismissed without leave to amend. Are you guessing, counsel, the first question we probably need to deal with is jurisdiction. Do we have jurisdiction here? Well, I know if Judge Wanger was right, but if Judge Wanger is wrong, then obviously the Court has jurisdiction. All right. I mean, if there's no 1983 action, then there's no Federal claim, and therefore I would say there would be no Federal jurisdiction. I'd like to ask a slightly different question. Are you convinced there's a final judgment in this case? Yeah. There's dismissal by the judge of all causes of action. I don't know what more could have transpired below in this Court. I mean, a judgment was entered by the Court dismissing the whole case. Subject – I mean, he dismissed the whole case without prejudice to the State causes of action, which, of course, allows us to proceed in State court on the remaining State claims, which ties into why I'm here arguing, because I'm concerned with, if you do go to State court, any collateral-stoppable argument or res judicata argument under the color of law issue that the judge addressed. Well, you probably rely on the Lacey case to validate your position that you don't need to replete claims that were dismissed with prejudice without leave to amend. Yeah. And maybe I'm – there's two issues here, and I think that's what the Court's getting to, is the First Amendment claim, which was dismissed as part of the original complaint without leave to amend. But there was definitely leave to amend with reference to the Fourth Amendment claims, and that was what the Court ultimately dismissed with the final judgment. I understood the argument of the defendants here with reference to the First Amendment claim that by not repleting it and suffering the exposure to sanctions, that my client waived his right to assert his First Amendment right. What about the color of law issue? Why don't we get to that? Did the – did Mr. Carson adequately plead that Jacobson acted under color of law? Yeah, absolutely, under that Anderson v. – under the Anderson v. Warner case, which actually the Court relied on, the district court, it's very clear. There's three points addressed in that case, acting in performance of a duty, purpose was to affect or influence behavior, and finally, that it was – there had to be a nexus between the acting – the officer, as it were, and what he actually did. Here, it's undisputed that Mr. Jacobson was a police officer or an – under California law, a peace officer. I mean, that's an undisputed fact. In fact, he was a police officer. Is it your position that if a peace officer is in a bar having a drink after work, that whatever he or she does is under color of law? No, absolutely not. And that's where, in the Anderson case, under the third requirement, that it be sufficient   And that's what the trial judge had a problem with, that it was sufficiently related to either to the officer's governmental status or to the performance of his official duties. And isn't that what the trial judge had a problem with? The allegations of this complaint didn't seem to tie into his official duties. Knocking the camera out of somebody's hands, what did that have to do with his official duties? Well, according to the defendants in their – in their – in their moving papers, the 12B6 papers that they moved, which I consider to be at least a judicial admission, if not their stop to deny, he was – his activities were prompted out of security, courthouse security. And that was clearly within the ambit of official duties. What – what – is he a security officer? No. He is a peace officer, which – who under California law, government code section cited in the brief, I believe it's 860, has all the authority of a regular police officer in a beat. If he sees something going amiss, it's his obligation as a peace officer to intervene and protect the public. He – and he was there in the courthouse, and if we take the defense statements at face value, and I've cited where they – they stated in their oppositions and in their – in their moving papers on their 12B6 motions that he was a peace officer and his – the reason, his motivation for attacking my client was to effectuate a – a – what he perceived to be some sort of security risk by virtue of my client having a camera in the courthouse. And so I don't see how – I mean, certainly there's – at the very least, there's an inference that has to be drawn here based on what they admit and what my client understood, that why else would this guy attack my client? There's no – there's no – I'm sorry, Your Honor. The third prong in Anderson is the challenged conduct must be related in some meaningful way either to the officer's governmental status or to the performance of his duties. What exactly are the duties of the defendant in this case, the individual defendant? His – his duty is that of a – of a peace officer. Oh, but I mean, I'm not talking – I'm not talking in a generic sense. I'm talking about his specific duties. What – what was his job? Well, Your Honor, this is my understanding of what an investigator – he's a district attorney investigator, so he was in the courthouse presumably – But he wasn't there as a security officer. He wasn't there keeping the peace. He was there on – on behalf of the district attorney's office, presumably as an investigator. Is that right? That would be – that would – not completely right, with all due respect, Your Honor. He's always under – under obligation to keep the peace. As a California peace officer, that is part of his official duties under – under California law. And – and the – he is vested with all the powers of a police officer, and he has – if – if he saw someone doing a stick-up on the street, it would be his obligation not to walk by. But as a peace officer, he has to intervene and protect the public. So – and – and again, we're – we're having to speculate and get in this gentleman's mind. We – we know what the defense has asserted on his behalf, that he was acting as a peace officer. And my client presumably is acting as a peace officer. So, I mean, how else is he to avoid the – how – how – we didn't get in – my bottom line is we didn't get in discovery on this issue. And I – I don't know what is in his mind. It could well be that he said, yeah, I just wanted to punch the lights out of Mr. Carson. In which case, then I think at the end of the day, then this case would have to be dismissed because there is no – he wasn't operating under color of law. I understand that distinction. But I'm absolutely convinced if we got into discovery, it will be proven as alleged in the complaint that his intent and his purpose was to be acting under color of law. He believed, for whatever reasons, the activities of Mr. Carson were not proper and that he had to intervene and stop those activities. And that's acting under color of law. Now, our contention is that was – ultimately, he did it in an excessive manner and he had no justification for it. But that doesn't change the fact, as – as I said in Anderson's case, that Mr. Carson's intention was to be acting under color of law, and I think that's proven by their – their process, I mean, by their own moving papers and their opposition papers related to the 12b6 case.  Thank you, counsel. Your time has expired. Thank you very much. I appreciate it. We'll hear from the other side. Good morning, Your Honors. Terrence Cassidy on behalf of Appellees Steve Jacobson and the County of Stanislaus. May it please the Court. This is a case about what is not alleged. Under the new heightened pleading standard of Iqbal and Twombly, plaintiffs are now required to set forth with specific detail the factual allegations that support their claim. And in each of the various areas in which the plaintiff complains of in this case, there are insufficient factual allegations. There's a conclusion about the performance of Steve Jacobson's duties, but there's no allegations regarding what his duties are and what they would be. The district court correctly found that the reasonable inference is that he's there assisting the DA, perhaps as a witness. But there's nothing more than that. The plaintiff also, I find interesting, there's no allegation why, if purported to be something involved with the criminal case, why the criminal defense attorney plaintiff would need this photograph in the defense of his case. It doesn't make any sense to me why you need a picture of a DA investigator. There's no allegations of that. Plaintiffs had two bites of the apple, so to speak. But as we go down each of the elements, and I'll start, first of all, just to quickly address the questions of the Court. There is no, technically there is no 54 judgment in the excerpt of record. However, it is clear from the order entered by the district court following the motion to dismiss that the clerk was directed to enter that judgment. And so I think consistent with that, there is jurisdiction. I apologize for that oversight. The second, the question's been raised about the argument by defense stating going to the use of the force. Well, whenever a defense goes to the use of the force and does not deal with the color of law issue, that's not waived. It's just simply assumed arguendo. There may be a color of law issue, then let's move forward and deal with the force. But in this case, as we look closer at the allegations regarding the color of state law, we find that there is a lack of factual allegations regarding the performance of Jacobson's duties. Counsel, how do you respond to the plaintiff's argument that you led them to believe that you assumed, you being the county, assumed that the officer was acting in some manner in aid of the county and wanted to proceed to the, that the force was reasonable or so on. How do you respond to his contention that whether he calls it judicial estoppel or whatever, you've lost the opportunity to take advantage of the court's ruling? Well, at the pleading stage, we have yet to file an answer and deny those allegations. So there has not been any specific waiver of the allegations that he was acting under color of state law. Frankly, I thought it was easier to simply address the Fourth Amendment and the First Amendment issues. To me, that was just a clean, straightforward way. Under the claims of the Fourth Amendment, we have the force, the alleged seizure of a person, and we have the potential taking of property. Under the force issue, we simply looked at it and said, it's a slap. I would just submit to this court that the case law, while not clear and certainly may support qualified immunity as well along these lines, much more egregious slaps have taken place and they have been found not to be a use of excessive force. In the freedom of movement with respect to whether there's a seizure of a person, we've clearly indicated that there are no allegations that he was not free to move. There's simply a conclusion that he felt he couldn't move, but there's no indicia. Jacobson is not in uniform. He doesn't identify himself as an officer. He doesn't say, stay put. Moreover, the plaintiff doesn't allege that he asked to leave and was prevented from leaving. On the taking of the property, there's certainly no complete taking of the property. There's no indication or allegation that the property wasn't properly returned to him. All he had to do was walk down the hall and grab it. Given those strong arguments on your behalf, couldn't we find that in an adversary system, the parties could pass through the pleadings and get to what in their view was the meat of the case? I would respectfully submit, Your Honor, on behalf of Steve Jacobson, that this simply is not a federal civil rights claim. At some point, a line needs to be drawn with respect to whether there is a 1983 claim for a violation of state authority in causing an infringement of a citizen's rights. And this is not that case. This may be a state tort case. But at some point, where is the line drawn? The line with respect to a slapping of a camera. We have no indication of bruising, no indication of injury. No, we don't have the broken finger. I mean, there's a multitude of ways that perhaps those allegations could have been made and they were not. So I would submit, Your Honor, that everything about this case is not ripe for it being a federal civil rights case. What I hear you saying is you really in your heart want a judgment on the merits, not on the pleadings. No, because in order to support the claims under Iqbal and Toomley, we have to find sufficient factual allegations that say that there was harm, that there was a constitutional right violated. In this case, I would submit there's neither First Amendment or Fourth Amendment violation for clearly the reasons that existed. Now, mea culpa for not having asserted color of state law in the opening brief. Obviously, the district judge would have entertained that twice. And so I apologize for that. But in hindsight, I've looked much closer at further pleadings I've received since that time. However, clearly, the allegations, whether under color of state law or in supporting the actual claims, don't give rise to a civil rights claim. And I would submit that we have created a body of law that has, you know, taken off and gotten a life of its own under Section 1983. And at a certain point, we have to look back and say, what is the line, the constitutional line that gets crossed? And so, and I represent a lot of different peace officers, so I suspect I just perhaps have that deep-seated belief that on occasion, it may be a state tort, but it's not sufficient to give rise to a federal civil rights violation. I would also submit, Your Honors, that the qualified immunity defense is ripe for this case. And we've found the erosion of the qualified immunity defense because many cases go to their full conclusion before we get an opportunity to say that the qualified immunity applies. Well, this is one of those cases we don't need to do that. We don't need to go the entire length of the case to say the law is not clearly established on the slapping of a camera, whether it be under the First Amendment or the Fourth Amendment. So I think there is several grounds. Kennedy. Assuming for the moment the Court were inclined to proceed in that manner, wouldn't that be a decision on the merits and not a decision on the pleadings? No, because as a matter of law, based on the pleadings that have been generated, the lack of factual allegations, the Court can make the determination that, simply stated, after two chances of trying to submit factual allegations to support civil rights violations, they simply don't exist under every element of a civil right, whether it be an alleged violation of the Fourth Amendment or the First Amendment. Counsel, you cited Forsyth in your brief, but my indication is that that was overruled by Lacey. Do you sound like you? I don't believe the entire matter was overruled by Lacey, but I do understand that conundrum. And I thought that there was a variance in that, and I'm sorry I'm drawing a blank on that, Your Honor. But you're not pursuing the jurisdictional issue right now, I gather? No. Very well. Anything further? Nothing, Your Honor. Submit it. Very well. The case just argued will be submitted for decision. And before calling the next case, I want to make up for failing to welcome our colleague from the District of Alaska. Judge Smith and I welcome Judge James Singleton, who is sitting with us several days this week. We thank you, Judge, for your willingness to help us with our docket. Thank you, Judge.
judges: Singleton, O'scannlain, Smith